# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERTINO VASQUEZ,** | : | |
| | : | **Civil No. 1:12-CV-0366** |
| **Plaintiff** | : | |
| | : | **(Judge Jones)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **UNICOR, _et al._,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.  Statement of Facts and of the Case

This is a _pro se_ civil rights action brought by Robertino Vasquez ("Vasquez"), a prisoner housed in the Low Security Correctional Institute Allenwood ("LSCI Allenwood") in Pennsylvania.  Vasquez first brought this action on February 27, 2012, alleging both Bivens[1] claims and institutional negligence claims pursuant to the Federal Tort Claims Act ("FTCA").[2]  (Doc. 1, p.1.)  On April 4, 2012, Vasquez filed an amended complaint.  (Doc. 11).  On May 7, 2012, Vasquez filed a supplement to his amended complaint.  (Doc. 21).

---

[1] Bivens v.Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

[2] "Under the FTCA, sovereign immunity is waived against persons suing the federal government for the commission of various torts."  Bowens v. U.S. Dept. of Justice, 2009 WL 3030457, *1, n. 2 (M.D. Pa.).  In an FTCA action, the only proper defendant is the United States.  Id.

## A.    Vasquez's Allegations

In his amended complaint, Vasquez named UNICOR Prison Industries[3] as a defendant along with 10 employees of the Federal Bureau of Prisons ("BOP"). (Doc. 11.)  Vasquez's complaint arises out of a prison industrial accident.  According to Vasquez, he was not properly trained to operate machinery in the UNICOR factory at LSCI Allenwood.  Specifically, Vasquez alleged that he suffered an injury to his right arm.  (Id. at p. 2).  Vasquez further alleged that he did not receive proper medical treatment after the injury.  (Id.).

According to Vasquez, UNICOR Prison Industries trained him to use the hand held cleaning brush on the cold press glue machine.  ( Id. at p. 6).  Vasquez stated that the brush is eight (8) inches long and is the only brush Vasquez or anyone else used to clean the glue machine until he was injured.  (Id. at p. 7).  On May 19, 2011, between 9:45 a.m. and 10 a.m., the hand held brush Vasquez was trained to use got caught in the roller.  (Id.).  The brush tilted and pinned Vasquez's hand between the brush and the roller.  (Id.).  Vasquez hit the brake on the cold press glue machine, but the machine kept rolling.  (Id.).  The machine pulled Vasquez's hand and arm and

[3] UNICOR Federal Prison Industries is a wholly owned United States government corporation created in 1934 that uses labor from the BOP to produce goods and services.

engulfed them up to his upper bicep crushing his arm and causing extensive damage. (Id.).

Vasquez stated that he signed paperwork before he started to work on the cold press glue machine which stated that the staff would train him on how to use the cold press glue machine and rollers. (Id.) However, according to Vasquez, the staff never trained Vasquez how to clean the cold press glue machine, instead, he was trained by another inmate. (Id.)

Vasquez stated that defendant, Shift Foreman T. Lieby observed him using the brush that he was trained to use and sanctioned it as the proper way to clean the machine. (Id. at pp. 7-8.) Defendant Safety Officer Recla also observed the method Vasquez used to clean the glue machine. (Id. at p. 7.) Factory Manager Floyd Dobson has also observed the cleaning of the glue machine with the hand held brush. (Id. at p. 8.)

Vasquez's complaint also raised concerns regarding the medical treatment which he received following this prison industrial accident, stating that he requested an MRI and it was denied. (Id. at p. 9). Vasquez also requested to be seen by an outside neurologist which has not been approved. (Id.) Vasquez further stated that he only received five physical therapy sessions in house. (Id.)

Vasquez then stated that he was fired by UNICOR and denied workman's compensation. (Id.) Vasquez alleged that an incident report was written against him

with full blame being placed on him. (Id.) Vasquez stated that he was sanctioned by UNICOR and the unit team staff. ( Id.) Finally, according to Vasquez, he continues to be treated in a cruel and inhumane manner. (Id. at p. 10.)

## B.    The Pending Motion to Dismiss or for Summary Judgment

On July 19, 2012, the defendants filed a motion to dismiss or, in the alternative for summary judgment in this case. (Doc. 32.) In this motion the defendants present two avenues of defense to these statutory and constitutional tort claims. First, with respect to Vasquez's FTCA claims arising out of this industrial accident in prison, the defendants contend that in United States v. Demko, 385 U.S. 149, 152 87 S.Ct. 382, 17 L.Ed.2d 258 (1966), the Supreme Court held that the exclusive remedy for a federal prisoner injured while working in a federal penitentiary is the Inmate Accident Compensation Act, 18 U.S.C. § 4126. As for the individual Eighth Amendment claims, the defendants contend the undisputed facts fail to show any deliberate indifference on the part of prison officials to this inmate's safety.

After a series of extensions granted by the court to both the plaintiff and the defendants, the parties have now fully briefed this summary judgment motion. Therefore, we will deem the motion to be ripe for resolution.

For the reasons set forth below, it is recommended that the defendants' motion be granted, and that this case be dismissed with respect to these claims as stated, but

that Vasquez be given leave to endeavor to amend his complaint, to state a claim upon which relief may be granted.

## II. Discussion

### A. Motion to Dismiss-Standard of Review

Defendants filed a motion to dismiss or, in the alternative for summary judgment. (Doc. 32). Federal Rule of Civil Procedure 12(b)(1) provides that a motion to dismiss is properly granted when the court lacks subject matter jurisdiction. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the jurisdiction of a federal court over the subject matter of the complaint. Walls v. Ahmed, 832 F.Supp. 940, 941 (E.D.Pa.1993); Liakakos v. CIGNA Corp. 704 F.Supp. 583 (E.D. Pa. 1988). In reviewing a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. See Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir.1989); D.P. Enterprises, Inc. v. Bucks County Community College, 725 F.2d 943, 944 (3d Cir.1984). Lack of subject matter jurisdiction is a ground for dismissal and may be raised at any time by the parties or by the court sua sponte. Walls, 832 F.Supp. 940, 941; Liakakos, 704 F.Supp. 583, 586. Because at issue in a factual 12(b)(1) motion is the trial court's very power to hear the case there is substantial authority that the trial court is free to weigh the

evidence and satisfy itself as to the existence of its jurisdiction. Mortensen v. First Fed. Sav. & Loan Ass'n., 549 F.2d 884, 891–92 (3d Cir. 1977). Thus, the court may consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction. Gotha v. United States, 115 F.3d 176 (3d Cir.1997).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a p[arty] to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a

complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... p[arty] can prove facts that the ... p[arty] has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a party must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

[B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the party's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

[A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the . . . well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged . . . are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the p[arty's] entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a p[arty] must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify

allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B.     Summary Judgment-Standard of Review

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Rule 56 provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed.R.Civ.P. 56(a). The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. "To be material, a fact must have the potential to alter the outcome of the case" under governing law. N.A.A.C.P v. North Hudson Regional Fire & Rescue, 665 F.3d 464, 475 (3d Cir. 2011). In order for an issue to be genuine, "all that is required is that sufficient

evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." In re Lemington Home for Aged, 659 F.3d 282, 290 (3d Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986)).

The movant bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once this initial requirement is met, the burden then shifts to the non-moving party to demonstrate the existence of a genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–86 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460–61 (3d Cir. 1989). In determining whether a genuine issue of material fact exists, the court views the evidence in the light most favorable to the party opposing summary judgment and draws all reasonable inferences in that party's favor. See Scott v. Harris, 550 U.S. 372, 378 (2007); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott, 550 U.S. at 380).

## C. Vasquez Failed to Exhaust his Administrative Remedies on the FTCA Claim

At the outset, in their motion, the defendants raise procedural obstacles to Vasquez's statutory tort claims made under the FTCA in this prison workplace accident. Specifically, defendants argued in support of their motion that Vasquez has failed to exhaust his administrative remedies before bringing his action in this court. (Doc. 38, pp. 6-18.) Defendants asserted that the Inmate Accident Compensation System is the exclusive remedy for an inmate who is injured while working at a federal institution. (Id.) Defendants further asserted that the Inmate Compensation System provides two avenues for remedy, lost-time wages for which Vasquez is ineligible and the second avenue of accident compensation for which Vasquez failed to exhaust. (Id.)

This alleged failure to properly exhaust has legal significance for Vasquez since the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under Section 1983 or any other federal law...until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Third Circuit has made clear that the PLRA constitutes a bright-line rule, and requires that inmate-plaintiffs must exhaust all available administrative remedies before bringing a suit in federal court challenging prison conditions. See Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000).

The PLRA's exhaustion requirement applies to Bivens claims such as this action.

Nyhuis, 204 F.3d at 68. The exhaustion requirement is not a jurisdictional bar, however, it is strictly enforced by the courts mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policy. The Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and, (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a).... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency.... Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto.... In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still

much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir.2000) (citations omitted). The United States Supreme Court has underscored that the PLRA's exhaustion requirement is applicable to all inmate suits concerning prison conditions, "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (citation omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Spruill v. Gillis, 372 F.3d 218, 228-230 (3d Cir.2004). Instead, courts have typically required across-the-board administrative exhaustion by inmate-plaintiffs who seek to pursue claims in federal court. Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Id. at 230. The Third Circuit further explained that the "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231. In practice, the procedural default rule operates to bar an inmate-plaintiff

from bringing suit in federal court if he has failed properly to pursue his grievance through the entire process prescribed by the prison's administrative grievance policy, including the intermediate and final stages of appeal. Id. at 231-32.

Furthermore, it is clear that Congress has prescribed specific rules governing inmate workplace accidents, rules which must be met before an inmate may bring a workplace accident claim. With respect to work related injury claims regarding prisoners, "[t]here are statutorily mandated procedures in place for tort claims (28 C.F.R. part 343, subpart C), Inmate Accident Compensation claims (28 C.F.R. part 301)... If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures." 28 C.F.R. § 542.10(c).

The statute provides:

(a) Inmate Accident Compensation may be awarded to former federal inmates or their dependents for physical impairment or death resultant from injuries sustained while performing work assignments in Federal Prison Industries, Inc., in institutional work assignments involving the operation or maintenance of a federal correctional facility, or in approved work assignments for other federal entities; or,

(b) Lost-time wages may be awarded to inmates assigned to Federal Prison Industries to paid institutional work assignments involving the operation or maintenance of a federal correctional facility, or in approved work assignments for other federal entities for work-related injuries resulting in time lost from the work assignment.

28 C.F.R. 301.101.

An inmate may not receive compensation for work related injuries prior to release. 29 C.F.R. 301.301(a). The inmate may file a claim:

> No more than 45 days prior to the date of the inmate's release, but no less than 15 days prior to this date, each inmate who feels that a residual physical impairment exists as a result of an industrial, institution, or other work-related injury shall submit a FPI Form 43, Inmate Claim for Compensation on Account of Work Injury.

28 C.F.R. 301.303

We now consider whether Vasquez has properly exhausted his administrative remedies before bringing suit. We find that, while Vasquez has brought a series of administrative claims in the summer of 2011 arising out of this accident he has not yet completed the pathway which will enable him to pursue this particular work-related injury claim. Thus, on June 1, 2011, Vasquez filed an Informal Resolution Form in which he stated that he was in severe pain and the swelling was increasing. (Doc. 38-8, Att. S.) On July 6, 2011, Vasquez re-filed the Informal Resolution Form which stated that the pain persisted and noted numbness. (Id.). On July 9, 2011, Vasquez completed a B9 Form, Number 647519-F1. (Id.) Vasquez alleged that he was not properly treated to prevent compartment syndrome and questioned the quality of his care and the inaccuracies in his medical records. (Id.) On July 20, 2011, Warden Strada responded to Vasquez stating that an MRI was not ordered by the orthopedic specialist and the claim of inadequate medical care was unfounded. (Id.) On July 22, 2011, Vasquez completed a B10 Form, Number 647519-R1. (Id., Att. T). Vasquez

stated that he was in back pain, lacked sensation and requested to be seen by a neurosurgeon.  (Id.)  On August 24, 2011, Regional Director Norwood stated that Vasquez's medical treatment was adequate and he further noted Vasquez's request for a neurosurgeon.  (Id.)  On September 19, 2011, Vasquez completed a B11 Form, Number 647519, which was rejected as inadequate.  (Id., Doc. A, p. 15.)  On October 24, 2011, the BOP Central Office received Vasquez's second B11 Form, Number 64719, which was denied.  (Id.)  On December 12, 2011, the BOP Central Office received Vasquez's third B11 Form, Number 64719, which was rejected as untimely.  (Id., p. 19)  On January 18, 2012, the BOP Central Office received Vasquez's forth B11 Form, Number 64719 which was rejected as improper and inadequate.  (Id., p. 21.)

On July 14, 2011, Vasquez filed a Claim for Damage, Injury or Death, SF 95.  (Doc. 39, ¶ 50[4].)  On August 11, 2010[5], the BOP Northeast Regional Office informed Vasquez that they received his Administrative Tort Claim on July 18, 2011, Claim No. TRT-NER-2011-05503.  (Doc. 42-1, p. 14.)  On October 12, 2011, the BOP Northeast Regional Office informed Vasquez that his claim was denied.  (Id., p. 15.)  The

---

[4] Attachment U which corresponds to the Defendants' Statement of Material Facts cited as Vasquez's SF 95 appears to be missing from the exhibits attached to the Defendants' brief.  (Doc. 38-1).

[5] The date appears to be a typographical error and should read August 11, 2011.

Northeast Regional Office further informed Vasquez that the proper remedy for work related accidents is the Inmate Accident Compensation System, 18 U.S.C. 4126, 28 C.F.R. 301. (Id.). Vasquez was informed that he should contact the Safety Manager at LSCI-Allenwood in order to obtain the proper forms and any claim for compensation should be submitted at or near the time of his release from confinement. (Id.). Vasquez was told that if he was dissatisfied with the response of the Northeast Regional Office, he could bring suit against the United States in the appropriate United States District Court within six months of the date of the letter. (Id.).

While Vasquez's efforts at administrative exhaustion have been diligent, and we can appreciate the apparent frustration experienced by this inmate *pro se* plaintiff in attempting to navigate this exhaustion requirement, we are constrained to agree that the proper remedy for work related accidents is the Inmate Accident Compensation System, 18 U.S.C. 4126, 28 C.F.R. 301. In United States v. Demko, 385 U.S. 149, 152 87 S.Ct. 382, 17 L.Ed.2d 258 (1966), the Supreme Court held that the exclusive remedy for a federal prisoner injured while working in a federal penitentiary is the Inmate Accident Compensation Act, 18 U.S.C. § 4126. See also Wooten v. United States, 825 F.2d 1039, 1044 (6th Cir. 1987). Furthermore, if a prisoner's claim is brought in connection with the subsequent care of the medical staff, rather than the initial injury sustained by working at the prison, courts have recognized that those

claims are also barred by <u>Demko</u>.  See <u>Wooten</u>, supra; <u>see also</u>  <u>Vander v. Dep't of Justice</u>, 268 F.3d 661, 664 (9th Cir. 2001).

Thus, we conclude that the FTCA claim for which Vasquez seeks relief for his work related injuries is barred by the Inmate Accident Compensation System, which provides the exclusive remedy in this specific setting. 18 U.S.C. 4126, 28 C.F.R. 301. Yet, while this conclusion may compel dismissal of Vasquez's FTCA claim in its present form, it plainly does not mean that Vasquez has no recourse against the United States for the injuries he alleges he suffered while working in prison industries. Quite the contrary, the Inmate Accident Compensation System, which provides the exclusive remedy in this specific setting, is still available to Vasquez for redress of these alleged injuries. 18 U.S.C. 4126, 28 C.F.R. 301. Vasquez's projected release date is October 9, 2014, via Good Conduct release.  (Doc. 38-1, Att. A).  Therefore, Vasquez has not reached the date to file a claim for his injury and any claim in the District Court is premature.  28 C.F.R. 301.303.

### D.     Vasquez's Failure to State a Claim Under *Bivens*

Turning to Vasquez's constitutional tort claims, we find that many of these claims fail on their merits, given the exacting standards which apply to Eighth Amendment claims**.** All of the various claims are governed by the same overarching and animating constitutional benchmarks. As the United States Court of Appeals for the Third Circuit has observed:

The Eighth Amendment protects against infliction of "cruel and unusual punishment." However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Id. (citation and internal quotations omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.

Resolution of an Eighth Amendment claim therefore "mandate[s] an inquiry into a prison official's state of mind." Wilson v. Seiter, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Two considerations define that inquiry. We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. Id. at 298, 111 S.Ct. 2321. If not, our inquiry is at an end. However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind. Id. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain. "What is necessary to establish an 'unnecessary and wanton infliction of pain ...' varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Fuentes v. Wagner, 206 F.3d 335, 344-45 (3d Cir. 2000)

With these tenets in mind we turn to a consideration of the individual Eighth Amendment claims advanced here by Vasquez.

### 1. Defendants Harrell Watts, J.L. Norwood, William Scism and Frank Strada

The defendants have moved to dismiss Vasquez's Bivens claims against the individual defendants Harrell Watts, J.L. Norwood, William Scism and Frank Strada. (Doc. 38, p. 18.) A claim of constitutional deprivation cannot be premised merely on the fact that the named defendant was a prison official when the incidents set forth in the complaint occurred. To state a constitutional tort claim, the plaintiff must show that the defendant actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v. Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow from personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or actual knowledge and acquiescence in an unconstitutional practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular with respect to prison officials it is well-established that:

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 1988).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior....See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)(finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed 329 (1812)(a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed 203 (1888)("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the misfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties").  Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against a prison official based solely upon the misdeeds of other correctional staff.  O'Connell v. Sobina, No. 06-238, 2008 WL 144199, *21 (W.D. denial of administrative remedies - Doc. 11, p.11 Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W.D. Pa. 2004).  Rather, "[p]ersonal involvement must  be alleged and is only present where the [official] directed the action of supervisees or actually knew of the actions and acquiesced in them.  See

Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)." Jetter v. Beard, 183 F.Appx 178, 181 (3d Cir. 2006).

Here, Vasquez's allegations involve the sanctioning of the use of the small brush to clean the glue machine by the BOP employees causing the injury to his arm and the subsequent "deliberate indifference" of the defendants in the treatment of his injuries. (Doc. 11.) The allegations in the amended complaint regarding Harrell Watts, J.L. Norwood, William Scism and Frank Strada involved the denial of Vasquez's administrative remedies. (Doc. 11, pp.11-13.) An inmate cannot sustain constitutional claims against prison officials based upon assertions that prison officials failed to adequately investigate or respond to his past grievances. Inmates do not have constitutional right to a prison grievance system. See Jones, 433 U.S. at 137-138; Speight v. Sims, No. 08-2038, 283 F. App'x 880, 2008 WL 2600723 at *1 (3d Cir. June 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner." Therefore, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D.D.C. 1995)(because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See

also Cole v. Sobina, No. 04-99J, 2007 WL 4460617 at *5 (W.D. Pa. Dec. 19, 2007)("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern.).

The United States Court of Appeals has held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances. See Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir. 1973)." Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir 2011). In this case, the allegations in the amended complaint regarding Harrell Watts, J.L. Norwood, William Scism and Frank Strada involved the denial of Vasquez's administrative remedies and nothing more, therefore, Vasquez's assertions as a matter of law do not suffice to state a constitutional tort claim. (Doc. 11, pp.11-13.) Therefore, Harrell Watts, J.L. Norwood, William Scism and Frank Strada should be dismissed from this case.

## 2. Defendants Floyd Dobson, T. Lieby and CO Recla

The defendants have moved to dismiss Vasquez's Bivens claims against the individual defendants Floyd Dobson, T. Lieby and CO Recla for lack of personal involvement in Vazquez's medical care. (Doc. 38, p. 13.) Defendants Floyd Dobson, T. Lieby and CO Recla are corrections officers who work in the UNICOR factory at LSCI Allenwood. Vasquez did not allege that the corrections defendants had any personal involvement in his medical treatment. (Doc. 11.) Vasquez alleged that he

received medical treatment after the injury. (Id.) Vasquez disagreed with the medical treatment, however, he does not allege any facts that the corrections defendants intentionally kept him from receiving treatment. (Id.)

The reach of the Eighth Amendment in a prison medical setting is limited. In a case such as this, where the plaintiff's complaint reflects that an inmate received some level of on-going medical care, it is also well-established that prison supervisors may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit in the following terms:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference

Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).

Applying this standard, courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, supervisory staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. See, e.g., Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006); Spruill v. Gillis, supra; Durmer v. O'Connor, supra; Garvey v. Martinez, No. 08-2217, 2010 WL 569852 (M.D. Pa. Feb. 11, 2010); Hodge v. United States, No. 06-1622, 2007 WL 2571938 (M.D. Pa. Aug. 31, 2007). This rule applies specifically to those prison staff whose involvement in a medical matter consists solely of examining, reviewing and addressing an inmate grievance concerning medical issues. Where supervisory staff simply review a grievance, and refer an inmate to medical personnel, it is clear that "merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim." Garvey v. Martinez, 2010 WL 569852,*7 (M.D.Pa. Feb. 11, 2010)(citations omitted); see Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006).

Therefore, to the extent that the plaintiff seeks to hold non-medical defendants, Floyd Dobson, T. Lieby and CO Recla liable for Vazquez's claims for Eighth Amendment "deliberate indifference" in his medical care, these claims lack merit and these defendants should be dismissed from this case.

Yet, while the defendants have addressed Vasquez's claims against these correctional officers that stem from his medical care perspective, liberally construed, it may be that Vasquez's complaint is making another, different claim, a claim that UNICOR staff knowingly exposed him to dangerous workplace conditions and were deliberately indifferent to those dangers. We, therefore, recommend that Vasquez be given another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint. We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see <u>Fletcher-Hardee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, <u>Alston v. Parker</u>, 363 F.3d 229 235 (3d Cir. 2004). Accordingly, it is recommended that the court provide the plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint at this time without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court**.**

### 3.    Defendants Spotts, Miller and Moore

The defendants have moved for summary judgment with respect to Vasquez's Bivens claims under the Eighth Amendment against the individual defendants Spotts, Miller and Moore who provided medical care for his injuries. (Doc. 38, p. 15.)

Liberally construed, Vasquez's amended complaint asserts allegations that these prison medical employees violated his rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to his medical needs. In order for Vasquez to support a claim, he must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison condition cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id. at 837." Garvey v, Martinez, 08-2217 WL 569852, at *6 (M.D. Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429

U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Vasquez is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate.

Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See, e.g., Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim,
> as it concerned [a care giver], because [the] allegations merely amounted
> to a disagreement over the proper course of his treatment and thus failed

to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x at 197-198 (citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)). Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 Fed. Appx. 228, 229 (8th Cir. 2002); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir.1994). Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a

constitutional claim under § 1983; <u>see, e.g.</u>, <u>Gause v. Diguglielmo</u>, 339 F. App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); <u>Innis v. Wilson</u>, 334 F. App'x 454 (3d Cir. 2009)(same); <u>Rozzelle v. Rossi</u>, 307 F. App'x 640 (3d Cir. 2008)(same); <u>Whooten v. Bussanich</u>, 248 F. App'x 324 (3d Cir. 2007)(same); <u>Ascenzi v. Diaz</u>, 247 F.App'x 390 (3d Cir. 2007)(same), since "the exercise by a doctor of his professional judgment is never deliberate indifference." <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).

Turning to Vasquez's claims, Vasquez's medical records show that he received emergency medical care following the accident including a CT scan. (Doc. 39, ¶¶ 16, 27.)  Vasquez further received daily wound care for four months post injury and was treated at the physical therapy clinics throughout his treatment.  (<u>Id.</u> at 21.)  Vasquez was also seen by an orthopedic specialist and a wound clinic outside the prison.  (<u>Id.</u> at 20, 32.)

Vasquez disagreed with the treatment he received and requested an MRI by outside hospital staff.  (Doc. 11, p. 8.)  Vasquez further requested to be seen by a neurologist and to have outside physical therapy sessions.  (<u>Id.</u>, p. 9.)  Vasquez's allegations at best describe his discontent with the medical care he received at the prison.  Vasquez's allegations do not rise to the level of "deliberate indifference" to a serious medical need.  In essence, Vasquez's complaints are nothing more than a

dispute between an inmate and prison medical staff relating to an MRI being performed and the request for a physician specialist. As a legal matter, disputes between inmates and medical professionals concerning which of several available treatments to use in addressing a medical condition simply do not rise to the level of a constitutional infraction involving deliberate indifference to a serious medical need. Indeed, courts have repeatedly held that when an inmate's Eighth Amendment claim entails nothing more than a disagreement concerning which type of treatment to prescribe for a particular ailment, prison officials are entitled to a judgment in their favor as a matter of law. See, e.g., Gause v. Diguglielmo, 339 F. App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F. App'x 454 (3d Cir. 2009)(same); Whooten v. Bussanich, 248 F. App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F. App'x 390 (3d Cir. 2007)(same).

Therefore, the claims against defendants Spotts, Miller and Moore should be dismissed.

## VI.    **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendant's Motion to Dismiss or, in the alternative Motion for Summary Judgment (Doc. 32.), be GRANTED,  without prejudice to providing the plaintiff one final opportunity to endeavor to correct the defects cited in this report, provided that the

plaintiff acts within 20 days of any order dismissing claims and parties, or granting

summary judgment on claims any parties.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions. Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any objections.

Submitted this 26th day of February 2013.

S/Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge